IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION



| UNITED STATES OF AMERICA, | § |
| Plaintiff, | § |
| | § |
| v. | § No. SA-07-CR-436-RF |
| | § |
| GILBERT SALINAS, | § |
| Defendant. | § |
| | § |

**AMENDED ORDER DENYING MOTION FOR RECONSIDERATION**

BEFORE THE COURT is the Government's Motion for Reconsideration, filed July 16, 2008; and Defendant Gilbert Salinas's Response. After careful consideration, the Court is of the opinion that the Government's Motion for Reconsideration (Docket No. 40) should be DENIED.

### I. Factual Background

This case stems from a July 14, 2007 traffic stop, arrest, and search of Defendant. Defendant objected to the search and filed a Motion to Suppress on March 21, 2008. The Court held a hearing on April 17, 2008, and issued an Order Granting Defendant's Motion to Suppress on May 21, 2008.

On the date at issue, July 14, 2007, Officer Bartholomew Vasquez received information from Detective Fuller that a blue Ford F-150 pickup truck with a specific Texas license plate would be delivering methamphetamine in the vicinity of Nogalitos and Malone

1

streets in San Antonio, Texas. Detective Fuller's information came from confidential informant, who the Government maintains is a previously reliable confidential informant. The record is incomplete with regard to the reliability of the confidential informant and with regard to exactly how Detective Fuller learned of the information. Upon observing that the truck matching Detective Fuller's description did not have a license plate attached to the front of the truck, Officer Vasquez stopped the truck for failure to properly display a license plate. Defendant was the driver of the truck. He testified that the license plate was displayed on the inside of his truck on the front dashboard facing forward. During his own testimony, Officer Vasquez could not recall whether the license plate was displayed on the dashboard, but stated his belief that Texas law required that it be attached to the front of a car. Officer Vasquez testified that even if it was on the dashboard, Defendant was still violating the Texas statute, based upon his belief about Texas law.

After being stopped, Officer Vasquez's partner asked for Defendant's driver's license and proof of insurance. Defendant produced proof of insurance, but could not provide the officers with a driver's license, only a Florida identification card. Officer Vasquez performed a computer check and determined that Defendant was operating the truck with an invalid driver's license, a violation of Texas Transportation Code § 521.457. Officer Vasquez arrested Defendant and he discovered, in a search incident to the arrest, approximately 86 grams of methamphetamine.

On July 25, 2007, a federal grand jury returned a one count indictment, charging Defendant with possession with intent to distribute 50 grams or more of methamphetamine. *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A).

On March 21, 2008, Defendant filed a Motion to Suppress the evidence from the stop. The Court granted the motion, concluding that Officer Vasquez was mistaken about Texas law requiring the display of a front license plate. The Texas Transportation Code only requires that a license be "displayed" in the front and rear of a car and does not require that it be "attached" to the front bumper as previously required. Tex. Transp. Code § 502.404(a); *see Texas v. Losoya*, 128 S.W.3d 413, 415 (Tex. App.—Austin 2004, pet. ref'd) (explaining that the statutory predecessor to § 502.404(a) required that the license be "attached" to the front of the car). The Court observed that the only Texas appellate court to rule on the matter interpreted this statute to permit the display of a license plate on the front dashboard instead of attached to the front bumper. *See Losoya*, 128 S.W.3d at 415-16.

The search was warrantless. Therefore, the Government bears the burden of proof at the suppression hearing. *United States v. Roch*, 5 F.3rd 894, 897 (5th Cir. 1993). Officer Vasquez testified that he did not know whether the license plate was displayed on the front dashboard. In contrast, both Defendant and Sara Kramer, an occupant of the truck, testified that the license plate was on the dashboard at the time of the traffic stop. The Court credited the testimony of Defendant and Sara Kramer, especially since the testimony of Officer Vasquez was equivocal on the point. The Court concluded that the Government failed to

present sufficient proof to meet its burden and to show that the license was not displayed on the dashboard as allowed under Texas law. Because the stop occurred at night, the Court found that the stop was justified at its inception as the darkness may have obstructed Officer Vasquez's view of the dashboard license plate. As Officer Vasquez and his partner approached the truck, however, they should have looked for and seen the license plate and immediately determined that no traffic violation occurred. Because the Government offered no other additional reasonable suspicion prior to completing the purpose of the stop, the Court held that the additional detention that discovered Defendant's invalid driver's license and methamphetamine was unjustified and violated his Fourth Amendment rights.

The Government now asks the Court to reconsider its June 17, 2008 Order. The Motion for Reconsideration is based on two grounds: (1) it is well within established legal parameters to continue to run identification and warrant checks even after the purpose of the stop has completed; and (2) Officer Vasquez had probable cause based on the information provided by the confidential informant that independently gave him probable cause to stop Defendant's truck.

## II.     Discussion

Motions to reconsider in criminal cases are judicial creations not derived from any statute or rule. *United States v. Brewer*, 60 F.3rd 1142, 1143 (5th Cir. 1995); *Matter of Shivers*, 900 F.Supp. 60, 62-63 (E.D.Tex. 1995). The district courts possess continuing jurisdiction over criminal cases and are free to reconsider their own earlier decisions. *United*

*States v. Scott*, 525 F.2nd 465, 467 (5th Cir. 1975). But "[m]otions for reconsideration 'serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.'" *United States v. Banks*, No. 1:08-cr-113, 2009 WL 585506 at *1, 2009 U.S. Dist. LEXIS 56076 at *2 (E.D. Tex. Mar. 6, 2009) (quoting *Waltman v. Int'l. Paper Co.*, 875 F.2nd 468, 473 (5th Cir. 1989)). There is a high burden of proof on the party seeking reconsideration in order "to discourage litigants from making repetitive arguments on issues already considered." *United States v. Olis*, Nos. H-07-3295 & H-03-217-01, 2008 WL 5046342 at *31, 2008 U.S. Dist. LEXIS 94947 at *104 (S.D. Tex. Nov. 21, 2008).

Here, the Government argues that there were two errors of law made when the Motion to Suppress was granted. First, the Government argues that Fourth Amendment rights are not violated when an identification and warrant checks are made during a traffic stop, even if the basis for the stop terminates prior to the checks being started. Second, even if such checks are not permitted, the Government maintains that the information supplied by the confidential informant, alone, gave Officer Vasquez independent probable cause to stop Defendant's truck.

### A. Identification and Warrant Checks

The Government urges the Court to consider two cases in reevaluating whether the an officer may continue a stop once the purpose of the stop has been resolved. In United States v. Brigham, the defendant was stopped for following too closely, and the officer

subsequently determined that the car was rented and that none of the occupants were authorized drivers. 382 F.3rd 500, 504 (5th Cir. 2004). The officer became suspicious, questioned all of the occupants and asked everyone to produce identification. *Id.* The dispatcher informed the officer that the rental car had not been reported stolen, but the officer continued his identification check. *Id.* at 505. Approximately six minutes later, the computer identification check determined that one of the passenger's Arkansas identification card was a fake. *Id.* The defendant then consented to a search of the car where the officer uncovered illegal drugs. *Id.* Even though the officer continued the identification check after the dispatch informed him that the rental car had not been reported stolen, the Fifth Circuit upheld the continued detention, while the officer waited for the computer check, as consistent with the Fourth Amendment. *Id.* at 503. In a similar case, *Kothe v. State*, the Texas Court of Criminal Appeals found that it was reasonable under the Fourth Amendment for an officer making a traffic stop to detain a suspect for three to twelve minutes after the officer determined no traffic violation occurred, in order for a routine computer warrant check to be completed. 152 S.W.3d 54, 57 (Tex. Crim. App. 2004).

The Court has considered both cases, but finds that the instant matter is factually distinguishable. In *Brigham*, a violation of the law—following too closely—actually occurred, and there was no objection to the initial stop on appeal. 5 F.3rd at 506. Nor did the defendant object to the officer's initial investigation into whether the car had been stolen. *See id.* The defendant objected to the officer's interrogation of all of the individuals in the

6

car and to the continued detention after it was determined that the car had not been reported stolen. *Id.* The Fifth Circuit disagreed, explaining that the officer's experience told him that a car not yet reported as stolen may still in fact be stolen, so the additional interrogations and computerized identification checks were permissible. *Id.* at 509. The discovery of the fake identification card of one of the passengers then gave the officer additional probable cause to investigate, and it was in the course of this further investigation that the officer obtained consent to search the car and uncovered the drugs. *Id.* In contrast, Officer Vasquez and his partner could have determined before they even asked Defendant for his driver's license and proof of insurance that there was not a violation of the Texas license plate display requirement. They did not encounter reasonable suspicion of the additional violation—driving without a license—until after his traffic stop for failure to display a front license plate should have ended.

The *Kothe* opinion is more analogous to the present case, but it is still materially distinguishable. The *Kothe* court emphasized that the computer check performed by the officer was done in conjunction with a determination of whether the defendant was intoxicated. 152 S.W.3d at 65-66. If it were somehow possible for the officer in *Kothe* to definitively determine that the defendant was not intoxicated, simply by looking through the front windshield, then the purpose of the stop would have been complete at that point and it would have been a violation of the Fourth Amendment to run a computerized warrant check

7

on the *Kothe* defendant.¹ But, since such a determination is not possible, no violation occurred. On the other hand, Officer Vasquez and his partner *could have* determined that no violation occurred simply by looking through the front windshield, and so the purpose of their stop terminated before they asked Defendant for his driver's license and proof of insurance.

For the reasons stated above, the Court has reconsidered its Order Granting Defendant's Motion to Suppress and concludes again that Officer Vasquez's detention of Defendant extended beyond its legitimate purpose of determining if the Texas Transportation Code's requirement of displaying a front license plate had been violated.

B.  **Probable Cause from the Confidential Informant**

The Government next argues that *Adams v. Williams*, 407 U.S. 143 (1972), permitted Officer Vasquez to stop and question Defendant regardless of whether he was violating the Texas license plate display requirements. An officer is permitted to make an investigatory

---

¹This Court is citing *Kothe* solely for its holding. In dicta, the Texas Court of Criminal Appeals indicated that it would have upheld the stop even if the officer did not begin the computer check until after he determined that the defendant was not intoxicated. 152 S.W.3d at 66. The court observed that "the order of events, while relevant to the legal determination of 'reasonableness,' is not in itself determinative." *Id.* Even if the facts in *Kothe* were different, and the officer had first performed the sobriety examination before running the computer check, this Court would still view the case would be distinguishable. The Texas Court of Criminal Appeal emphasized that there was no evidence or suggestion that the officer "failed to diligently pursue his *investigation.*" *Id.* (emphasis added). The key difference between a driver suspected of driving while intoxicated and a driver suspected of driving without a front license plate is that the former requires an investigation to prove innocence while the latter does not.

stop if there is reasonable suspicion that "criminal activity is afoot." *Terry v. Ohio*, 392 U.S. 1, 30; *Adams*, 407 U.S. at 147. In *Adams*, the Supreme Court upheld a *Terry* stop based on information a confidential informant, who was personally known to the officer, directly told to the officer—that a nearby individual, the defendant, was in possession of narcotics and a gun. 407 U.S. at 144-45, 147. When the officer asked the defendant to open his car door, the defendant instead opened up the car window. *Id.* at 145. The officer then reached through the window and grabbed the gun in the defendant's waistband—exactly where the confidential informant told the officer the gun would be. *Id.* A key element of the Court's analysis was that the officer was justifiably fearful for his safety—he was patrolling a high crime area at 2:15 in the morning. *Id.* at 147-48. This concern for his safety was heightened when the defendant opened the window instead of the door. *Id.* at 148. Here, there was no reason for Officer Vasquez to fear for his safety—he was sitting in the safety of his police car observing a truck drive down the street.

The Government cites to no authority, other than *Adams*, to support its position that the information from a confidential informant justifies a stop of Defendant here. The Court's independent research has found no case or authority demonstrating that the Court made a legal error in its determination that the information Officer Vasquez received indirectly from a confidential informant was, by itself, insufficient to justify a stop. Detective Fuller told Officer Vasquez that a blue Ford F-150 with a specific Texas license plate would be delivering methamphetamine in the vicinity of Nogalitos and Malone Streets. There is no

information in the record as to the reliability of this information or to how it was gathered other than that it was relayed to Officer Vasquez by Detective Fuller. Officer Vasquez then observed a blue Ford F-150 with the specified license plate number given to him by Detective Fuller driving in the vicinity of Nogalitos and Malone. The precise issue raised by these facts is whether police officers who receive information from a confidential informant about a particular truck that is alleged to be delivering narcotics in a particular area may stop the truck when they observe it doing nothing more than driving in the specified neighborhood.

Case law indicates that in narcotics cases where there is no danger to the officer, the information given to the officers must be coupled with additional circumstances to infer possible drug activity, even if the information comes from a reliable confidential informant and not from an anonymous source. *See, e.g., United States v. Wangler*, 987 F.2nd 228, 229 (5th Cir. 1993) (observing that the truck the police stopped went first to the precise location that the informant said it would); *United States v. Scott*, No. SA-05-CR-0762-RF, 2006 WL 870619 at *1, 2006 U.S. Dist. LEXIS 16202 at *2-4 (W.D. Tex Mar. 20, 2006) (refusing to suppress evidence where the confidential informant correctly predicted that the defendant would stop at the post office to make a narcotics transaction and police did not stop the defendant until he actually stopped at the post office). The closest that the Supreme Court has come to this question was in *Alabama v. White*, 496 U.S. 325 (1990). In *White*, the police received an anonymous tip that a woman would leave a particular apartment, drive a

particular car, and go to a specific motel while possessing cocaine. *Id.* at 325. The police independently observed the woman leaving the specified apartment, get in the specified car, and drive on a direct route to the specified motel. *Id.* The woman was stopped just before the motel and the Court upheld the stop. *Id.* The information provided the police in *White* was more than a simple identification of a car and a general location—the information provided the defendant's departure point and destination.

Officer Vasquez's information informed him that a particular truck would be making methamphetamine deliveries in a neighborhood, a generalized area. If he had waited for Defendant's truck to engage in an activity consistent with a methamphetamine delivery, such as stopping within the neighborhood, then he would have probable cause to stop and question Defendant independent of any suspicion of a traffic violation, pursuant to *White*, 496 U.S. at 325, as interpreted by *Scott*, 2006 WL 870619 at *1, 2006 U.S. Dist. LEXIS 16202 at *2-4. However, Defendant was stopped when all he was doing was driving through the neighborhood in question. Officer Vasquez's information had only been corroborated to the extent that it correctly identified a truck that would be driving through the neighborhood. This is similar to the fact pattern in *Florida v. J.L.*, 529 U.S. 266 (2000). There, the Court found that an anonymous tip that merely identified the location—which was not in the immediate vicinity of the police officers—and attire of a juvenile carrying a gun did not give the officers probable cause to make a *Terry* stop. *Id.* at 268.

The types of stops that are allowed under *Adams* are stops of "suspicious individual[s], in order to determine [their] identity or to maintain the status quo momentarily while obtaining more information." 407 U.S. at 146. Such a stop was not warranted here as it would be justified solely on the information provided by the confidential informant and was unaccompanied by suspicious behavior. Defendant was merely driving down the street—he was not being tracked to a particular location and there were no additional suspicious movements or corroborating observations. *See United States v. Duffault*, 314 F.3rd 203, 208 (5th Cir. 2002) (observing that the confidential informant correctly predicted that the defendant would meet and caravan with a second specific car while transporting drugs). The proper time to stop Defendant, based solely on this confidential information would have been when and if he stopped his truck in the neighborhood where the confidential informant said he would make a delivery or when his conduct otherwise created probable cause. At that time, he would have been engaging in activity that could indicate a crime was about to occur, and it would be proper to question Defendant to briefly "maintain the status quo." Merely driving through a neighborhood while obeying all traffic laws is not suspicious behavior that may corroborate the information provided by the confidential informant here.

### C. Interpretation of the Texas Transportation Code

Since the Court's original order, a conflict of the case law interpretation of the Texas Transportation Code's license display requirement has arisen. The Court previously

determined that Texas law allows a driver to display a license on the front dashboard without violating the statue, relying on the Texas Third Court of Appeals decision in *State v. Losoya*, 128 S.W.3d 413 (Tex. App.—Austin 2004, pet. ref'd). At the time of the Court's original order, this was the only appellate court in the state to interpret whether placing a license plate on the dashboard, instead of attaching it to the front bumper, violated the Texas license plate display requirements. Recently, the Texas Seventh Court of Appeals took up the matter and came to the opposite conclusion in *Spence v. State*, No. 07-08-0335-CR, ___ S.W.3d ___, 2009 WL 2901635, 2009 Tex. App. LEXIS 7158 (Tex. App.—Amarillo Sept. 10, 2009, no pet. h.). If *Spence* rather than *Losoya* is the correct interpretation of the law, then Officer Vasquez and his partner could have lawfully continued their traffic stop even after the license plate on the front dashboard became observable.

The Texas Transportation Code requires that a car must "display two license plates, at the front and rear of the vehicle." Tex. Transp. Code § 502.404(a). The *Losoya* panel found the term "front" to be ambiguous and noted that it was not defined in the code. 128 S.W.3d at 415. The *Losoya* panel concluded that displaying the license plate on the front of the car included placing it on the front dashboard by pointing to two extratextual factors—the statute's statutory predecessor and the statute's apparent purpose. *Id.* at 415-16. Analysis of these two factors is permissible if the plain meaning of a statute is ambiguous, or if the plain meaning leads to an absurd result. *Jordan v. State*, 36 S.W.3d 871, 873 (Tex. Crim. App. 2001); *see also* Tex. Gov't Code § 311.023. Because requiring license plates to be

displayed only on the front bumper is not an absurd result, the *Losoya* panel's analysis was proper only if the term "front" is ambiguous. The *Spence* panel strongly objects to *Losoya*'s declaration of an ambiguity, complaining that front was not ambiguous and that the *Losoya* panel never explained how it could be ambiguous. ___ S.W.3d at ___, 2009 WL 2901635 at *2, 2009 Tex. App. LEXIS 7158 at *5-6. The *Spence* panel explains that the common definition of front is the foremost part of the car, which would usually, but not always be the front bumper.[2] ___ S.W.3d at ___, 2009 WL 2901635 at *3, 2009 Tex. App. LEXIS 7158 at *7 (citing *Black's Law Dictionary*, *Dictionary.com*, and *Merriam-Webster.com*).

Though the *Losoya* panel should, perhaps, have articulated why the term "front" was ambiguous, the Court agrees with the *Losoya* panel that the meaning of "front," in the context of a car or truck, is ambiguous. It is true that "front" often refers to the foremost part of an object as the *Spence* panel maintains. *See* ___ S.W.3d at ___, 2009 WL 2901635 at *2, 2009 Tex. App. LEXIS 7158 at *5-6. But "front" can also refer to any part of an object that is facing forward and visible to an observer who is in front of the object, not just the object's foremost edge. *See, e.g., Dictionary.com*, dictionary.reference.com (last visited Oct. 9, 2009) (including a definition of "front" as "the part or side of anything that faces forward"); *The Oxford English Dictionary* 214 (2d ed. 1989) (defining "front" to include "[t]he part or side of an object which seems to look out or to be presented to the eye" and also to include "in a position facing the spectator"); *Webster's Third New International*

---

[2] The front bumper is the foremost part of the truck at issue here, a Ford F-150.

14

*Dictionary of the English Language Unabridged* 914 (3d ed. 2002) (defining "front" to include "the part or surface of something that seems to look out or be directed forward").[3] Because the front windshield of a car faces forward and is part of the car readily "presented" to a viewer when a car is seen from the front, the Court thinks that the term is ambiguous within § 502.404(a) of the Texas Transportation Code. The requirement that a car must display a license plate at the "front" of the car could require a car have the license plate displayed at its foremost edge, which in most vehicles, would be the front bumper. Alternatively, the display requirement could also permit the display of the license plate on any part of the car that faces forward and is readily presentable to the a viewer of the car from the front.

After observing the ambiguity of the term "front" in the statute, the *Losoya* panel noted that the prior statutory language prohibited operation of a motor vehicle "without having displayed thereon, *and attached thereto*, two (2) license plates, one (1) at the front and one (1) at the rear." 128 S.W.3d at 415 (quoting with added emphasis Tex. Rev. Civ. Stat. Ann. Art. 6675a-3e, § 3, since repealed). The *Losoya* panel contrasted the language with the present statute which does not require the license plate to be physically attached to

---

[3]The *Spence* panel also objects that the *Losoya* panel is rewriting the statute, changing "display at the front" to "display facing the front." ___ S.W. 3d at ___, 2009 WL 2901635 at *4, 2009 Tex. App. LEXIS 7158 at *9-10. When "front" is defined as "the part or side of anything that faces forward," any license plate that is displayed facing forward and is visible from an observer who is in front of the car can be considered to be displayed at the front of the car. Thus, the Court does not believe that the *Losoya* panel's interpretation rewrites the statute in any way.

the vehicle. *Id.* Because "every word in a statute has been used for a purpose," *Dowthitt v. State*, 931 S.W. 2d 244, 258 (Tex. Crim. App. 1996), the Court agrees with the *Losoya* panel that the Texas Legislature's choice to remove the attachment requirement from the law demonstrates that the plate can be "displayed" at the front of the vehicle without being physically attached to the vehicle. *Cf.* 128 S.W.3d at 415-16. The *Spence* panel did not dispute or comment on this observation about the change in statutory language since the panel's primary objection to the *Losoya* panel was to whether or not "front" was ambiguous. *See generally* ___ S.W.3d ___, 2009 WL 2901635, 2009 Tex. App. LEXIS 7158. The Court does not find the *Spence* panel's analysis persuasive in this respect.

The *Losoya* panel next determined that the primary purpose of the statute requiring display of the license plate "is to facilitate the identification of a motor vehicle by its license plate number whether it is moving toward or away from the viewer." 128 S.W. 3d at 416. The Court agrees with the *Losoya* panel that displaying a license plate on the dashboard is consistent with this purpose. *See id.* The *Spence* panel does not dispute the purpose of the statute, but argues that allowing display of the license plate on the front dashboard defeats, rather than serves the purpose:

> [I]f the test is whether the officers can see the plate, then that frees the vehicle's owner to place it most anywhere so long as it can somehow be seen. Not only could it be attached to the front bumper but also a door, hood, rear spoiler, window, fender, or any other location of the car as long as the police could see it. And, should the owner pursue such options, then law enforcement officials attempting to identify the car would no longer be able to simply focus upon the front of the car. Instead, they would have to spend more time looking at all possible places at which the plate could be. This, in turn, would most

likely result in more stops for it is much harder to focus on several areas (as opposed to one) when a car drives past at traveling speeds, as exemplified here. So, the Losoya interpretation of "front" actually impedes what it considered to be the purpose underlying the statute. ___ S.W.3d at ___, 2009 WL 2901635 at *3, 2009 Tex. App. LEXIS 7158 at *8-9.

The *Spence* panel may be correct—if a license plate were always on the front bumper of a car, it may be easier for the car's license plate to be identified. But the mere fact that the *Spence* panel could conceive of a statute that was *better* at achieving the purpose of § 502.440(a) does not mean that the *Loyoya* panel's interpretation does not achieve the purpose. Moreover, the Court believes that the *Spence* panel's concerns about the placement of the front license plate in unusual locations are already prohibited by § 502.409(a)(7)(A)-(C) of the Texas Transportation Code which applies to all cars driving in Texas, whether or not they are licensed in Texas.[4] § 502.404(a) is a statute concerned with license plate display,

---

[4]In fact, the Fifth Circuit recently affirmed a decision to not suppress evidence gathered from a § 502.409(a)(7)(B) stop for obscuring one half or more of the state of registration's name in *United States v. Montes-Hernandez*, No. 08-51261, 2009 WL 3172349, 2009 U.S. App. LEXIS 21885 (5th Cir. Oct. 5, 2009).

The issues in *Montes-Hernandez* were also analogous to the issues in the present matter. The *Montes-Hernandez* defendant raised two objections to the traffic stop, arguing (1) that the officer was mistaken as to the scope of the statute, and (2) that the stop was not objectively reasonable. 2009 WL 3172349 at *3, *5-6, 2009 U.S. App. LEXIS 21885 at *8, *14-15. The defendant's argument that the officer made a mistake of law was rejected, as the officer defined the statute as prohibiting apparatus that "obstructed" one half or more of the state name, instead of the proper word, "obscure." 2009 WL 3172349 at *3, 2009 U.S. App. LEXIS 21885 at *8-9. The Fifth Circuit observed that "obstruct" and "obscure" have substantially the same meaning. 2009 WL 3172349 at *4, 2009 U.S. App. LEXIS 21885 at *11-12. In contrast, here, Officer Vasquez testified that he believed § 521.404(a) to prohibit placing a license plate on the front dashboard, while this Court found that it did not.

while § 502.409(a)(7)(A)-(C) is concerned about license plate visibility. *See* Tex. Transp. Code § 502.409(a)(7)(A)-(C) (prohibiting display of a license plate that "has a coating, covering, or *other apparatus* that: (A) distorts angular visibility or detectability; (B) alters *or obscures* one-half or more of the name of the state in which the vehicle is registered; or (C) alters *or obscures* the letters or numbers of the license plate or the color of a plate." (emphasis added)).

Compared to a statute that does not require the display of *any* front license plate,[5] requiring the display of a license plate somewhere on the front of the car, including the front dashboard, is vastly superior to identifying a car's license plate number from the front, as it would be impossible to do so if no license plate were required. Neither panel has identified exactly why the Texas Legislature chose to rewrite the law. The fact that the legislature could have done a better job in facilitating identification of cars does not mean that judges

---

The *Montes-Hernandez* defendant's second argument was that the stop was not objectively reasonable since the officer's initial observations could not determine if a violation occurred, and it was subsequently determined that the statute had not been violated. 2009 WL 3172349 at *5-6, 2009 U.S. App. LEXIS 21885 at *13-14. The Fifth Circuit again rejected the defendant's argument, finding that the licence plate cover was close enough to violating the statute—it was legal by less than a millimeter—for the stop to be objectively reasonable. 2009 WL 3172349 at *6, 2009 U.S. App. LEXIS 21885 at *14-15. Here, Officer Vasquez or his partner should have seen the licence plate on the front dashboard which would have allowed them to immediately determine that there was no violation—denying them reasonable suspicion to continue the traffic stop.

[5]There are many states—including Florida, the state Defendant moved to Texas from—that require license plates at the rear of the car but do not require front license plates. *See, e.g.*, WEST'S F.S.A. § 316.605(1) (requiring display of a front license plate only on certain vehicles).

should now rewrite the statute to achieve that purpose. *Cf. State v. Markovich*, 77 S.W.3d 274, 280-81 (Tex. Crim. App. 2002). Further, such a rewrite of the statute could potentially defeat secondary purposes of the legislature.

For the reasons stated above, the Court is of the opinion that the analysis of § 502.404(a) in *Losoya* is more persuasive than the analysis in *Spence* on the issue herein. Therefore, on this record, the Court finds that the Government failed to prove that Officer Vasquez and his partner had reasonable probable cause to continue the stop beyond the time when one of the officers could have and should have seen the license plate that, the evidence demonstrates, was on the front dashboard.

//

//

//

//

//

//

//

//

//

//

//

## III. Conclusion

For the reasons stated above and articulated in the Court's Order Granting Defendant's Motion to Suppress Evidence, the Government's Motion to Reconsider is DENIED.[6]

It must be observed that there has been a very substantial delay in addressing the Motion for Reconsideration on the part of the Court. While the delay has been occasioned, among other things, by the Court's move from the Western District of Texas to the Northern District of Texas, this matter should have nevertheless been addressed more expeditiously. The Court regrets the delay and inconvenience caused to the parties.

Signed this 16th day of October, 2009.

> Royal Furgeson
> Royal Furgeson
> Senior United States District Judge

---

[6](disposes of Docket No. 40)